IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DESIREE S.,

                        Plaintiff,

            v.                                    Civil Action No.
                                                  3:22-CV-0985 (MAD/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                     CHELSEA WILLIAMS RENGEL, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                GEOFFREY M. PETERS, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the supplemental security insurance ("SSI") benefits for which she has applied. The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. For the reasons set forth below, I recommend a finding that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in September of 1989, and is currently thirty-three years of age. She was twenty-five years old on March 26, 2015, the date on which she filed her application for benefits. Plaintiff measures five feet and three inches in height, and weighed approximately one hundred and ninety-eight pounds during the relevant period. Plaintiff has lived in various apartments with her minor children in Cortland, New York.

Plaintiff reported in one of her filings to the agency that she has a seventh grade education with a history of involvement in special education classes. However, educational records document that she had attended school for at least part of the ninth grade, and the ALJ noted in his decision

that plaintiff testified at one of the administrative hearings that she obtained an IEP diploma.  The record therefore is equivocal regarding plaintiff's level of education.[1]

According to the plaintiff, she did not work in any significant capacity prior to the relevant period, and the jobs she did perform ended because she does not like being told what to do.  She did admit to engaging in some short-term self-employment work activity that consisted of cleaning houses for family members in 2019, but testified that such work ended because of her mental health issues.

Plaintiff alleges that she suffers primarily from attention deficit hyperactivity disorder ("ADHD"), a learning disability, bipolar disorder, a personality disorder, posttraumatic stress disorder ("PTSD"), and a panic disorder with agoraphobia.  As is relevant to her application for benefits, plaintiff has treated for her impairments with sources at Family Counseling Services of Cortland County, the Cortland County Mental Health Clinic, her primary care provider at Family Health Network of Cortland, and psychologist Dr. Anne Hunt.

At the administrative hearing related to her application for benefits

---

[1]    In his decision, ALJ Theurer characterized plaintiff's education as "limited," as defined in 20 C.F.R. § 416.964.  *See* Administrative Transcript at 27.

held on June 16, 2021,[2] plaintiff testified that she does not leave her house and does not socialize because she does not like being around other people.  She also reported that she does not like being told what to do, and provided an example of quitting her last job when she had to go take care of her child and the individual she was working for would not allow her to leave.  Plaintiff also stated that she worked for a few months in 2019 cleaning houses, but was unable to continue doing that because of her mental health issues.

In a function report dated April 2015, plaintiff wrote that she cares for her newborn son and her four year old daughter with the help of her boyfriend and mother, and is able to perform self-care activities, cook daily, shop, spend time socializing with her children and boyfriend, do chores although she is very lazy and has little motivation to do them, and leave the house for appointments although she does not feel comfortable going out alone because of trauma.  She stated that she gets distracted and loses focus easily, cannot follow instructions without being shown what to do, does not like authority or being told what to do, and has difficulty getting

---

[2]    The transcripts for the administrative hearings held prior to the 2021 hearing, which took place on May 9, 2017, August 28, 2017, and August 26, 2019, according to the previous ALJ decisions in this case, do not appear in the administrative transcript. However, ALJ Theurer summarized the testimony taken at those hearings in great detail in his decision.

along with others due to social anxiety.  Plaintiff further reported that stress and changes in schedule make her feel "out of control," which will result in her isolating herself and experiencing anger or mood swings.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

Plaintiff applied for SSI payments under Title XVI of the Social Security Act on March 26, 2015, alleging disability due to ADHD, a learning disability, bipolar disorder, a personality disorder, PTSD, and a panic disorder with agoraphobia.  Administrative Law Judge ("ALJ") Elizabeth W. Koennecke held administrative hearings to address plaintiff's application for benefits on May 9, 2017, and August 28, 2017, following which she issued a decision on September 8, 2017, finding that plaintiff was not disabled, and therefore not entitled to the benefits for which she had applied.  On July 27, 2018, the Social Security Appeals Council ("Appeals Council") granted review of that decision, which it then vacated, finding that ALJ Koennecke had not properly articulated her findings regarding plaintiff's mental impairments at step two and failed to appropriately assess plaintiff's subjective symptoms and their limiting effects.  The Appeals Council remanded the matter for further consideration of these issues.

ALJ Koennecke held another administrative hearing on August 26,

2019, following which she issued another unfavorable decision on October 1, 2019, again finding that plaintiff was not disabled during the relevant period.  On February 10, 2021, the Appeals Council again granted review and vacated ALJ Koennecke's decision, finding both that she had not complied with the prior remand order to properly articulate her step two finding, and that she had failed to adequately evaluate the treating source opinion from Dr. Anne Hunt.  The Appeals Council remanded the matter for further administrative proceedings, directing that it be assigned to a different ALJ in accordance with agency policy.

The matter was ultimately reassigned to ALJ Kenneth Theurer, who held another administrative hearing on June 16, 2021, at which he took testimony from medical expert Dr. Billings Fuess.  Following that hearing, ALJ Theurer issued yet another unfavorable decision, finding that plaintiff was not disabled during the relevant time period.  On July 25, 2022, the Appeals Council denied plaintiff's request for review of the decision, making that decision the final determination of the Commissioner.

B.    The ALJ's Decision

In the most recent decision, ALJ Theurer applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff did not engage in substantial gainful activity ("SGA") during the

6

relevant period, and that plaintiff's short-term work activity in 2019 that might otherwise qualify as SGA instead constituted an unsuccessful work attempt.  ALJ Theurer next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including PTSD, anxiety disorder, bipolar disorder, a learning disorder, borderline personality disorder, and a schizoaffective disorder.  As part of his step two finding, ALJ Theurer also found that plaintiff's alleged obesity and status post ankle fracture do not constitute severe impairments.

At step three, ALJ Theurer examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 12.03, 12.04, 12.06, 12.08, 12.11 and 12.15.

ALJ Theurer next surveyed the available record evidence and determined that plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following exceptions:

> she retains the ability to understand and follow
> simple instructions and directions, perform simple

tasks with supervision and independently, maintain attention/concentration for simple tasks, and regularly attend to a routine and maintain a schedule; she can relate to and interact with co-workers and supervisors to the extent necessary to carry out simple tasks, i.e., she can ask for help when needed, handle conflicts with others, state her own point of view, initiate or sustain a conversation, and understand and respond to physical, verbal, and emotional social cues, but she should avoid work requiring more complex interaction or joint efforts with co-workers to achieve work goals; she should have no more than occasional contact with co-workers and supervisors; she should have no more than incidental contact with the public, where incidental is defined as more than never and less than occasional, simply that the job should not involve direct interaction with the public, but the claimant does not need to be isolated away from the public; and she can handle reasonable levels of simple work-related stress, in that she can make simple decisions directly related to the completion of her tasks in a stable, unchanging work environment.

ALJ Theurer went on to step four and found that plaintiff has no past relevant work. The ALJ then proceeded to step five and, after eliciting testimony from a vocational expert, found that plaintiff remains able to perform available work in the national economy, citing the representative positions of folding machine operator, housekeeping cleaner, and spooling machine operator.  Based upon these findings, ALJ Theurer determined that plaintiff was not disabled at the relevant times.

C.    <u>This Action</u>

Plaintiff commenced this action on September 19, 2022.[3]  In support

of her challenge to the ALJ's determination, plaintiff argues that the ALJ

failed to conduct a proper assessment of her subjective reports of

symptoms in accordance with the applicable regulations.  Dkt. No. 10.

Oral argument was conducted in this matter, by telephone, on August

31, 2023, at which time decision was reserved.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

decision by the Commissioner is subject to a "very deferential" standard of

review, and is limited to analyzing whether the correct legal standards were

applied, and whether the decision is supported by substantial evidence.

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.

1998).  Where there is reasonable doubt as to whether an ALJ has applied

the proper legal standards, the decision should not be affirmed even

---

[3]      This action is timely, and the Commissioner does not argue otherwise.  It has
been treated in accordance with the procedures set forth in the Supplemental Social
Security Rules and General Order No. 18.  Under those provisions, the court treats the
action procedurally as if cross-motions for judgment on the pleadings have been filed
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

though the ultimate conclusion reached is arguably supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.   <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaged in substantial gainful activity ("SGA"); if so, then

the claimant is not disabled, and the inquiry need proceed no further.  *Id.*

11

§§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level

constituting SGA, then the second step involves an examination of whether

the claimant has a severe impairment or combination of impairments that

significantly restricts his or her physical or mental ability to perform basic

work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to

suffer from such an impairment, the agency must next determine whether it

meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.*

§§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so,

then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F.

Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d

582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, at step five the agency

must examine whether the claimant can do any other work.  *Id.* §§

404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C. Analysis

Plaintiff's sole argument in support of her challenge to the Commissioner's determination is her contention that the ALJ failed to articulate reasons, supported by substantial evidence, when declining to fully accept her subjective reports concerning the intensity, persistence, and limiting effect of her symptoms. Dkt. No. 10. Plaintiff's argument implicates the two-step review protocol applicable in social security cases for assessing a claimant's subjective reports of symptoms, under which an ALJ must first determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, and, if so, must then evaluate the intensity and persistence of those symptoms and determine the extent to which those symptoms limit the claimant's ability to perform work-related activities. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3-8. When addressing this second prong, an ALJ must consider the objective medical

13

evidence and other evidence in the record, including statements by the claimant and reports from both medical and non-medical sources, and must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms, considering relevant factors which include evidence regarding (1) daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate or aggravate the claimant's symptoms, (4) the type, dosage, effectiveness, and side effects of medication, (5) any treatment other than medication that is used to relieve the symptoms, (6) other measures to obtain relief of symptoms, and (7) any other relevant factors.  *Id.*

If the ALJ finds that a claimant's subjective testimony should be rejected, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate and whether the determination is supported by substantial evidence.  *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above, provided that it is clear from the decision that the ALJ considered all of the relevant evidence and that he or she provided specific reasons for his or her determination as to the

intensity, persistence, and limiting effect of the claimant's symptoms. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision"). Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony is entitled to considerable deference, *Edward J. v. Kijakazi*, 21-CV-0150, 2022 WL 4536257 (N.D.N.Y. Sept. 28, 2022) (Stewart, M.J.), and should not be disturbed on court review. *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

In his decision ALJ Theurer, after engaging in an extensive recitation of plaintiff's subjective reports advanced throughout the record and multiple administrative hearings, found that, although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Administrative Transcript ("AT") at 22-23.[4]  The ALJ specifically noted in support of this

---

[4]    The administrative transcript is found at Dkt. No. 9, and will be referred to throughout this decision as "AT ___."

finding that "there is no evidence that the claimant has received any treatment from a mental health provider since 2017," and from a review of his decision appears to have relied heavily on that lack of mental health treatment when discounting plaintiff's subjective complaints.  AT 23.

As was discussed above, the type and extent of treatment is one of the factors an ALJ should consider when assessing a claimant's subjective reports.  20 C.F.R. § 416.929(c)(3).  It should be noted, however, that it has been fairly consistently held in this court that "[f]aulting a person with diagnosed mental illness for failing to pursue mental health treatment is a 'questionable practice'" when assessing the intensity, persistence, and limiting effects of a claimant's symptoms.  *See Kelly Ann G. v. Comm'r of Soc. Sec.*, 20-CV-1013, 2022 WL 160266, at *9 (N.D.N.Y. Jan. 18, 2022) (Hummel, M.J.) (quoting *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) (Suddaby, J.)); *accord, Austin v. Comm'r of Soc. Sec.*, 2015 WL 3504886, at *8 (N.D.N.Y. June 3, 2015) (Suddaby, J.) (collecting cases).  Although the presence of a mental health impairment certainly does not shield a plaintiff from any scrutiny regarding the failure to seek treatment in all cases, *see Stephanie D. v. Comm'r of Soc. Sec.*, 20-CV-0768, 2021 WL 4066539, at *8 (N.D.N.Y. Sept. 7, 2021) (Lovric, M.J.), the overall record in this case and the fact that her lack of treatment was the

sole explicit reason the ALJ provided to support his finding regarding her subjective complaints suggest that such caution is merited here.  Further, to the extent the ALJ may have, in conjunction with failure to seek treatment in general, relied on plaintiff's failure to take medications when they were prescribed, he failed to indicate how he considered the various reasons offered by plaintiff throughout the record for such failures, including being pregnant in 2014, that ones she has tried in the past have not worked or were not tolerated, and that one caused her to be too tired to be able to care for her son and made her vision blurry.  AT 602, 619, 627.  For these reasons, I find that the ALJ's reliance on plaintiff's failure to seek or comply with treatment is not a sufficient reason supported by substantial evidence, on its own, to support his finding regarding plaintiff's subjective reports.

Although it is the only clearly articulated rationale to support the ALJ's finding regarding plaintiff's claims of symptomology, the lack of treatment is not necessarily the only reason that can be gleaned from the ALJ's decision.  In assessing the ALJ's findings, his decision must be read as a whole.  *See Adam R. T. v. Comm'r of Soc. Sec.*, 21-CV-1170, 2023 WL 1775689, at *4 (N.D.N.Y. Feb. 6, 2023) (Scullin, J.); *Candy A. O. v. Kijakazi*, 20-CV-0766, 2022 WL 226804, at *5 (N.D.N.Y. Jan. 26, 2022) (Peebles, M.J.); *see also Karleigh J. T. v. Kijakazi*, 20-CV-1086, 2022 WL

539436, at *7 (N.D.N.Y. Feb. 23, 2022) (Suddaby, C.J.) (collecting cases). The ALJ's decision also includes a discussion of the treatment evidence, as well as an assessment of the various opinions present in the record, both of which could arguably be construed as providing an additional explanation for the ALJ's finding.  I find, however, that these discussions are nonetheless insufficient.

Although the ALJ did engage in some analysis of the medical evidence, that discussion does not provide the necessary insight, and fails to permit meaningful review of how he assessed all the treatment evidence when considering plaintiff's subjective reports.  Notably, in addressing the treatment evidence from prior to 2017, the ALJ focused on evidence from plaintiff's primary care provider that shows very little mental abnormality, but ignored other evidence of treatment from 2014 and 2015 in particular, in which plaintiff did display symptoms such as anxiety, a labile mood and affect, poor speech, preoccupations, or, in the case of one counseling record dated March 12, 2015, a somewhat incongruous response of laughter while discussing a recent incident in which her ex-partner tried to stab her.  *See e.g.*, AT 603, 612-13, 628, 688, 692.  Although the ALJ certainly was not required to discuss every piece of evidence in order to show that he considered it, his interpretation of the treatment evidence as

being essentially normal from a mental health standpoint while not addressing records where abnormalities were noted calls into question whether his discussion of the evidence can be used as support for his finding regarding plaintiff's subjective reports.  Further, the ALJ acknowledged that various evidence from Dr. Anne Hunt from 2017 and plaintiff's primary care physician in early November 2018 showed some fairly significant mental symptoms, yet it is unclear how the ALJ factored this evidence into his conclusion, given that it can perhaps be said to be supportive of some of the greater limitations she has alleged.

The only other apparent rationale that could be said to be supportive of the ALJ's finding that plaintiff is not as limited as alleged is his assessment of the opinion evidence, and most specifically his finding of persuasiveness primarily with respect to the opinions from medical expert Dr. Billings Fuess and consultative examiner Dr. Dennis Noia.  AT 24. However, I am not persuaded that reliance on certain opinion evidence, especially given that the uncertainties regarding how the ALJ considered all of the medical treatment evidence in record might also call into question his reliance on those opinions, can be considered to be sufficient to provide substantial support for the ALJ's finding regarding plaintiff's subjective reports.

The Commissioner argues that the ALJ also relied on plaintiff's reported activities of daily living.  Such reliance, however, is not clearly articulated in the ALJ's decision, and instead appears to represent *post hoc* reasoning.  The ALJ did note, as part of his discussion of the (B) criteria related to the mental impairment listings, plaintiff's report in 2015 that she is able to sometimes get along with friends and family, shop, use public transportation, take care of her son and daughter, play games, listen to music, perform personal care, prepare food, clean, do laundry, and manage money.  AT 16-17.  However, the ALJ also acknowledged that plaintiff's testimony from the various administrative hearings revealed statements that she was limited to a much greater extent in her ability to perform many of these same, and other, activities.  AT 21-22.  Even if the ALJ's decision can be fairly interpreted as indicating the ALJ accepted the report of daily activities made by plaintiff to the consultative examiner in 2015 over those reported at the hearings in 2017, 2019, and 2021, he has not provided any clear explanation as to the basis for that conclusion.  I therefore do not find in the ALJ's decision any discussion of plaintiff's reported daily activities sufficient to provide an explanation regarding his overall assessment of plaintiff's subjective reports.

Based on the foregoing, I find that the ALJ has failed to provide

sufficient reasons to show that his assessment of plaintiff's subjective reports is supported by substantial evidence, and therefore recommend that this matter be remanded for further administrative proceedings.  Given the extensive procedural posture of this case, I also find it prudent to emphasize that, on remand, the ALJ should provide clear reasons to support his findings if such reasons exist; there should be no need after three separate erroneous ALJ decisions for a reviewer to have to parse through the ALJ's decision in order to glean his intended rationale.

IV.    SUMMARY AND RECOMMENDATION

        After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination did not result from the application of proper legal principles and is not supported by substantial evidence.  Accordingly, it is hereby respectfully

        RECOMMENDED that plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 15) be DENIED, the Commissioner's decision be VACATED, and this matter be remanded for further proceedings consistent with this decision and order, without a directed finding of disability, pursuant to sentence four of 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:      September 8, 2023
        Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge